**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>CPESAZ LIQUIDATING, INC., fka Community Provider of Enrichment Services, Inc.; NDS LIQUIDATING, INC., fka Novelles Developmental Services, Inc.; CPESCA LIQUIDATING, INC., fka CPES California, Inc.,<br>　　　　　Debtors. | BAP No. CC-21-1123-LGT<br><br>Bk. No. 9:20-bk-10554-DS |
| ROBERT BENNETTI; LINDA MARIANO; LINKI PEDDY; CHARLES FOUST, JR.; INDIVDUAL CPES ESOP PARTICIPANTS,<br>　　　　　Appellants,<br>v.<br>CPESAZ LIQUIDATING, INC., fka Community Provider of Enrichment Services, Inc.; NDS LIQUIDATING, INC., fka Novelles Developmental Services, Inc.; CPESCA LIQUIDATING, INC., fka CPES California, Inc.; OXFORD RESTRUCTURING ADVISORS, LLC,<br>　　　　　Appellees. | MEMORANDUM* |

---

\* This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

1

Appeal from the United States Bankruptcy Court
for the Central District of California
Deborah J. Saltzman, Bankruptcy Judge, Presiding

Before: LAFFERTY, GAN, and TAYLOR, Bankruptcy Judges.

## INTRODUCTION

This is an appeal from the bankruptcy court's order confirming Debtors' chapter 11[1] plan of liquidation (the "Plan"). Appellants are participants in Debtors' Employee Stock Ownership Plan and Trust ("ESOP"). Their primary argument on appeal is that the bankruptcy court erred in confirming the Plan without permitting them either to direct the ESOP trustee's vote via a "direction pass-through" vote (a vote directed by plan participants and beneficiaries, i.e., shareholders) or to vote as unsecured creditors; they claim this failure violated ERISA,[2] the ESOP Document, and Arizona law. They also argue that the Plan is tainted by conflict and contains impermissible provisions, including third-party releases.

Appellants, however, have not shown that the bankruptcy court abused its discretion in confirming the Plan or that it erred in its underlying rulings. We AFFIRM.

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532. "Rule" references are the Federal Rules of Bankruptcy Procedure.

[2] "ERISA" stands for the Employee Retirement Income Security Act of 1974.

## FACTS[3]

This case involves three debtors: CPESAZ Liquidating, Inc. fka Community Provider of Enrichment Services, Inc. ("CPESAZ"); NDS Liquidating, Inc., fka Novelles Developmental Services, Inc. ("Novelles"); and CPESCA Liquidating, Inc., fka CPES California, Inc. ("CPESCA") (collectively, "Debtors"). CPESAZ and Novelles filed their chapter 11 petitions in April 2020, and CPESCA in August 2020. The cases were ordered jointly administered, with CPESAZ as lead.[4] No creditors' committee was appointed.

Debtors were previously in the business of offering behavioral health services. They operated day treatment centers and programs in California and Arizona. As of the petition date, all shares of CPESAZ capital stock were held by the Community Provider of Enrichment Services, Inc. ("CPES") ESOP. Appellants are former employees and individual participants in the CPES ESOP (the "ESOP Participants"). Appellees are Oxford Restructuring Advisors, LLC, the liquidating trustee of the CPES Liquidating Trust ("Liquidating Trustee"), which was created pursuant to the chapter 11 plan, and the Debtors.

---

[3] Where necessary, we have exercised our discretion to take judicial notice of the dockets and imaged papers filed in debtors' bankruptcy cases. *See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

[4] The other two entities are wholly owned subsidiaries of CPESAZ.

In November 2020, the bankruptcy court entered an order approving the sale of substantially all Debtors' assets. The sale order was not appealed, and the sale has been consummated.

Thereafter, Debtors filed a liquidating plan and disclosure statement, which were subsequently amended. The Plan, as amended, proposed a 100% payout to general unsecured creditors, with interest, to be overseen by a liquidating trustee appointed by the bankruptcy court under § 1123(b)(3)(B). The three debtor entities were to be dissolved. The liquidation analysis in the amended disclosure statement estimated that $8.4 million would be available for distribution to the ESOP Trust after payment of allowed claims, compared to $8 million in a chapter 7 liquidation.

The Plan provides that any ESOP Participant wishing to vote on the plan must hold a claim in Class 3 (general unsecured creditors) that is "separate and apart from" a direct ESOP claim and that any direct ESOP claims would be asserted by the ESOP Trustee, Miguel Parades, on behalf of all holders of beneficial interests in the ESOP. The ESOP Participants are classified as Class 6 equity interests, to be treated as follows:

> Each Equity Interest shall be canceled on the Effective Date of the Plan. Allowed Class 6 Equity Interests will be paid a Pro Rata dividend, if any, and only to the extent Allowed Class 3 General Unsecured Claims are paid in full, from the remaining net proceeds of the Liquidating Trust Assets. Notwithstanding anything to the contrary in this Plan, the ESOP Trustee shall retain responsibility, standing, and

4

authority to commence, prosecute and settle lawsuits or actions on behalf of the holders of beneficial interests to the Equity Interest in the ESOP.

The Plan further provides, "The ESOP Trustee, on behalf of the ESOP Trust, the sole Holder of Class 6 Equity Interests, is entitled to vote to accept or reject the Plan."

The motion to approve the disclosure statement included a request to establish procedures for solicitation and tabulation of votes. Appellants objected to the provision entitling the ESOP Trustee to exercise his discretion to accept or reject the plan rather than permitting them to direct the vote. The bankruptcy court overruled their objection and approved the disclosure statement and voting procedures.

Appellants thereafter moved to appoint a chapter 11 trustee or convert the case to chapter 7, alleging that the ESOP Trustee had conflicts of interest and complaining that the proposed plan denied a vote to the individual ESOP Participants. The bankruptcy court denied the motion.

Appellants also moved for temporary allowance of individual ESOP Participants' claims or an order estimating those claims for purposes of voting on the plan ("Temporary Allowance Motion"), again arguing that the ESOP Trustee could not vote the interests of the participants without a "direction pass-through vote" by the participants. The bankruptcy court denied the motion, finding that the ESOP Trustee was the proper party to submit a vote on behalf of the ESOP participants. In the end, two of the

three impaired classes of creditors, Class 3, general unsecured creditors, and Class 6, equity interests, voted to accept the Plan. The other impaired class, Class 4 (intercompany claims), was deemed to have rejected the Plan, as no votes were received.

Appellants filed an objection to confirmation of the Plan, asserting that the Plan violated their voting rights and their right to bring claims for breaches of ERISA fiduciary duties. They also objected to the release and exculpation provisions of the Plan and argued that the Plan was unconfirmable because it provided for a discharge of the Debtors and because it violated the best interests of creditors test. Appellants also filed a response to the Debtors' confirmation memorandum and an objection to the proposed findings of fact and conclusions of law regarding plan confirmation. The bankruptcy court overruled the objections and confirmed the Plan. Appellants timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(L). Subject to the discussion below, we have jurisdiction under 28 U.S.C. § 158.

## ISSUES

Should this appeal be dismissed?

Did the bankruptcy court err in denying the motion to appoint a chapter 11 trustee or convert the case to chapter 7?

6

Did the bankruptcy court err in denying the Temporary Allowance Motion?

Did the bankruptcy court abuse its discretion in confirming Debtors' chapter 11 plan of liquidation?

## STANDARDS OF REVIEW

We review the bankruptcy court's order confirming a chapter 11 plan for abuse of discretion. *Beal Bank USA v. Windmill Durango Off., LLC (In re Windmill Durango Off., LLC)*, 481 B.R. 51, 63 (9th Cir. BAP 2012). We also review for abuse of discretion the bankruptcy court's denial of a motion to convert. *Richter v. Klein/Ray Broad. (In re Klein/Ray Broad.)*, 100 B.R. 509, 511 9th Cir. BAP 1987).

A bankruptcy court abuses its discretion if it applies the wrong legal standard, or misapplies the correct legal standard, or if it makes factual findings that are illogical, implausible, or without support in inferences that may be drawn from the facts in the record. *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc).

Whether cause exists to appoint a chapter 11 trustee requires factual findings that we review for clear error. *In re Klein/Ray Broad.*, 100 B.R. at 511. A factual finding is clearly erroneous if it is illogical, implausible, or without support from inferences that may be drawn from the facts in the record. *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1196 (9th Cir. 2010).

## DISCUSSION

## A. Appellees' Motion to Dismiss Appeal and/or Strike

Appellees moved to dismiss this appeal on two jurisdictional grounds, arguing that: (1) the Panel lacks jurisdiction over the issues raised in the appeal because those issues were adjudicated in previous orders entered by the bankruptcy court that were not appealed; and (2) the appeal is equitably moot. Alternatively, Appellees ask the Panel to: (1) dismiss the appeal because Appellants' initial opening brief exceeds the page and word limits set by Rule 8015; or (2) strike improper arguments and allegations from Appellants' opening brief and strike references to new evidence.

### 1. Jurisdiction

**a. The Panel has jurisdiction over the issues raised in this appeal because the bankruptcy court's prior rulings on those issues were not final.**

A bankruptcy court's order may be immediately appealed if it "finally dispose of discrete disputes within the larger case." *Bullard v. Blue Hills Bank*, 575 U.S. 496, 501 (2015). "The test for finality in bankruptcy typically asks two questions: (1) whether the bankruptcy court's order fully and finally determined the discrete issue or issues it addressed; and (2) whether it resolves and seriously affects substantive rights." *Jue v. Liu (In re Liu)*, 611 B.R. 864, 870 (9th Cir. BAP 2020) (citing *Eden Place, LLC v. Perl (In re Perl)*, 811 F.3d 1120, 1126 (9th Cir. 2016) (additional citation and internal quotations omitted).

Appellees contend that we lack jurisdiction to review the four issues listed in Appellants' opening brief because they were previously addressed, either in the bankruptcy court's order denying the Temporary Allowance Motion or its order denying the motion to appoint a trustee. Those issues are:

• Whether the bankruptcy court erred when it confirmed the Plan without permitting ESOP Participants to vote either as equity (through a direction pass-through vote under ERISA, the IRC, and applicable state law) or as unsecured creditors.

• Whether the bankruptcy court erred when it confirmed the Plan without requiring evidence regarding whether any of the Appellees were unsecured creditors.

• Whether the bankruptcy court erred when it confirmed the Plan by failing to appoint a chapter 11 trustee or convert the case to chapter 7 and by failing to require and consider any evidence from Debtors, their counsel, and/or the ESOP Trustee of his relationship to the Debtors.

• Whether the bankruptcy court erred by allowing the ESOP Trustee to vote the interests of ESOP Participants when the evidence showed that such individual was nothing more than a directed trustee and an independent contractor at will of Debtors and had no authority or resources to take positions contrary to the Debtors, its management and board of directors, and its attorneys.

Although not included in their list of issues on appeal, Appellants also argue in their opening brief—as they did in the bankruptcy court—that the release and exculpation provisions of the Plan violate their rights to bring claims for ERISA violations and that the Plan was unconfirmable because it provided for a discharge of the Debtors' debts and violated the best interests of creditors test. These are confirmation issues over which we have jurisdiction in this appeal. Appellees do not argue otherwise.

The issues regarding the bankruptcy court's refusal to appoint a chapter 11 trustee and whether the ESOP Trustee acted at the behest of Debtors rather than the ESOP Participants were raised in the context of the motion to appoint a trustee. But an order denying a motion to convert or appoint a chapter 11 trustee is interlocutory. *United States Bakery v. Svenhard's Swedish Bakery*, 632 B.R 312, 320 (E.D. Cal. 2021), *appeal filed*, (9th Cir. Nov. 29, 2021); *In re Klein/Ray Broad.*, 100 B.R. at 510-11. The bankruptcy court's ruling on that motion did not become final until it confirmed the Plan. We thus have jurisdiction to consider those issues.

The other two issues—whether the bankruptcy court erred in refusing to permit the ESOP Participants a direction pass-through vote on the Plan or to require evidence on whether any of the ESOP Participants held general unsecured claims—were raised in the context of the Temporary Allowance Motion. But the bankruptcy court's ruling on that motion was narrow and not the final word on anything other than whether the ESOP Participants were entitled to have any claims estimated or

allowed for voting purposes. The bankruptcy court denied it because: (1) Appellants had not met their burden to show that they had any claims that could be allowed on a temporary basis; and (2) the assertion that Appellants had pass-through voting rights under the ESOP documents and applicable law was not supported by the evidence or the law. The court qualified its ruling when it stated, "whether there is evidence out there that would cause the Court to make a different ruling at a different point in time, I'm not making that determination . . . ." Accordingly, the order denying the Temporary Allowance Motion did not finally resolve the identified issues.

### b.     This appeal is not equitably moot.

An appeal is equitably moot "if the case 'presents transactions that are so complex or difficult to unwind that debtors, creditors, and third parties are entitled to rely on the final bankruptcy court order.'" *JPMCC 2007-C1 Grasslawn Lodging, LLC v. Transwest Resort Props., Inc. (In re Transwest Resort Props., Inc.)*, 801 F.3d 1161, 1167 (9th Cir. 2015) (quoting *Rev. Op. Grp. v. ML Manager LLC (In re Mortgs. Ltd.)*, 771 F.3d 1211, 1215 (9th Cir. 2014)). Unlike constitutional mootness, equitable mootness is a judge-created doctrine that reflects not an inability to provide relief, but an unwillingness to do so. *Id.*

We are to assess four factors in considering a dismissal of an appeal on equitable mootness grounds: (1) whether a stay was sought; (2) whether substantial consummation of the plan has occurred; (3) the effect that a

remedy may have on third parties not before the court; and (4) whether the bankruptcy court can provide "effective and equitable relief without completely knocking the props out from under the plan and thereby creating an uncontrollable situation for the bankruptcy court." *Id.* at 1167-68 (9th Cir. 2015) (quoting *Motor Vehicle Cas. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.)*, 677 F.3d 869, 881 (9th Cir. 2012)). In the Ninth Circuit, this last consideration is the most important. *Id.* at 1171. "Even if the relief would be only partial, '[w]here equitable relief, though incomplete, is available, the appeal is not moot.'" *Id.* (quoting *In re Thorpe Insulation Co.*, 677 F.3d at 883).

Appellees point out that Appellants did not seek a stay pending appeal. This factor weighs heavily in favor of a finding of equitable mootness. *In re Mortgages Ltd.*, 771 F.3d at 1217-18. *See also Cobb v. City of Stockton (In re City of Stockton, Cal.)*, 909 F.3d 1256, 1264 (9th Cir. 2018).[5] But

---

[5] In *City of Stockton*, the Ninth Circuit stated that it is "'obligatory' that one seeking relief from plan confirmation 'pursue with diligence all available remedies to obtain a stay of execution of the objectionable order.' Failure to do so without adequate explanation should result in dismissal." 909 F.3d at 1264 (quoting *Trone v. Roberts Farms, Inc. (In re Roberts Farms, Inc.)*, 652 F.2d 793, 798 (9th Cir. 1981). Although this language suggests a per se rule requiring dismissal whenever an appellant has failed to seek a stay pending appeal, we note that the *City of Stockton* court went on to analyze the remaining equitable mootness factors before ultimately deciding to dismiss the appeal. 909 F.3d at 1264-65. And we have found no Ninth Circuit authority for such a per se rule. Rather, courts look at whether the failure to seek a stay caused other parties to change position in reliance on the finality of the subject order such that it would be inequitable to reverse the order. *See In re Roberts Farms, Inc.*, 652 F.2d at 798 ("[I]t is obligatory upon appellant in a situation like the one with which we are faced to pursue with diligence all available remedies to obtain a stay of execution of the objectionable

the other factors weigh against such a finding. First, even if it can be argued that substantial consummation has occurred, it is unlikely that third parties would be prejudiced or that the bankruptcy court could not fashion appropriate equitable relief without "knocking the props out from under the plan." The asset sale occurred long before the Plan was proposed, and the Plan is a mechanism for determining claims and potential causes of action to marshal and properly distribute the proceeds. According to Appellants, those proceeds are approximately $15.5 million. Appellees assert that $32,000 in administrative expenses has been paid and an additional $148,000 has been approved to be disbursed to another administrative claimant. They also state that $359,414 has been distributed to general unsecured creditors. Appellants point out that these sums are a mere fraction of the total proceeds and that numerous claims remain unpaid.

As for prejudice to third parties, "for this factor to weigh in favor of holding a party's appeal to be equitably moot, the specific relief sought must bear unduly on innocent third parties." *In re Transwest Resort Props., Inc.*, 801 F.3d at 1169. Appellees have not made such a showing. In any event, the payment of money can be undone and thus weighs against an equitable mootness finding. *See Elder v. Uecker (In re Elder)*, 325 B.R. 292, 296-97 (N.D. Cal. 2005). Appellees further argue that the replacement of the

order . . . **if the failure to do so creates a situation rendering it inequitable to reverse the orders appealed from.**" (emphasis added)).

13

Liquidating Trustee by a chapter 11 trustee would result in a costly duplication of efforts, but to the extent this is a valid consideration in the equitable mootness analysis, it does not mean the bankruptcy court could not fashion any relief.

### 2. Failure to comply with Rule 8015

Appellees ask the Panel to dismiss the appeal on the ground that Appellants' initial opening brief exceeded the page and word number limits of Rule 8015. After the motion was filed, Appellants filed an amended brief that complied with the rule. Even if they had not, we would not dismiss the appeal on this basis. *See Ehrenberg v. Cal. State Univ., Fullerton Found. (In re Beachport Ent.)*, 396 F.3d 1083, 1088 (9th Cir. 2005) (reversing BAP's summary dismissal of appeal for failure to provide certain documents in the excerpts of record, as required under Rule 8009, on the ground that "the sanction of summary dismissal was inappropriately harsh in relation to the harm that was actually caused.").

### 3. Motion to Strike

Finally, Appellees ask the Panel to strike portions of Appellants' brief that contain factual allegations and legal arguments that were not properly raised in the bankruptcy court. We generally do not consider arguments not properly raised before the bankruptcy court. *See O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.)*, 887 F.2d 955, 957 (9th Cir. 1989). And to the extent a factual assertion is not supported by the record, we need not accept it.

14

Appellees also ask the Panel to strike new documents and information that was not before the bankruptcy court. We generally do not consider evidence that was not presented to the bankruptcy court unless it bears on a jurisdictional issue such as mootness. Thus we see no need to order the documents stricken. All relief requested in the motion to dismiss and/or strike is DENIED.

**B.    The bankruptcy court did not err by declining to appoint a trustee or convert the case.**

Section 1104 provides that the bankruptcy court shall appoint a trustee "for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause . . . ." Section 1112(b) provides that the bankruptcy court may convert a chapter 11 case to chapter 7 "for cause."

Appellants moved for appointment of a chapter 11 trustee based on their lack of confidence in Debtors' management and their belief that Mr. Paredes was not an independent fiduciary who would vote in their interests. They also believed that the actions of the Debtors' directors, officers, former ESOP fiduciaries, and the current and former ESOP Trustee should be investigated to determine whether claims could be asserted against those individuals. They alleged that Debtors had "extensive conflicts of interest" based on an admitted overvaluation of the ESOP as of the end of 2018 and Debtors' expenditure of $2 million for the purchase of

15

fiduciary liability insurance and proposal of a plan that granted releases to the persons subject to the insurance coverage. They also complained about the amount of attorneys' fees incurred by Debtors' counsel.

Debtors pointed out in their opposition that the cost for the D&O portion of insurance expenses was around $120,000 (not $2 million), claims against the current and former ESOP Trustees were **not** released under the Plan, and the Plan preserves claims against former officers and directors. They also noted that Mr. Paredes was not installed on behalf of Debtors but to oversee the ESOP assets. They pointed out that attorneys' fees and costs would be subject to bankruptcy court approval and that appointing a trustee at that juncture would increase, not decrease, administrative costs.

The bankruptcy court denied the motion, finding that the evidence did not establish cause to appoint a chapter 11 trustee or to convert the case. The court noted that the concerns raised by Appellants regarding Plan provisions could be addressed in the context of confirmation.

Appellants argue that the bankruptcy court erred in denying the motion for the same reasons presented to the bankruptcy court. They also contend that the court erred "by failing to require and consider any evidence from the Debtors, their counsel, and/or the ESOP Trustee of his relationship to the Debtors." But Appellants, not Debtors, had the burden to show cause for the appointment of a trustee. *United Sur. & Indem. Co. v. López-Muñoz (In re López-Muñoz)*, 866 F.3d 487, 497 (1st Cir. 2017).

Appellants also contend that the ESOP Participants' lack of confidence in, and acrimony toward, Debtors' management and their counsel constituted "cause" to appoint a trustee, citing *In re Sundale, Ltd.*, 400 B.R. 890, 909-10 (Bankr. S.D. Fla. 2009), and *In re Eurospark Industries, Inc.*, 424 B.R. 621, 630-31 (Bankr. E.D.N.Y. 2010). But Appellants fail to mention that the *Sundale* court did not appoint a trustee based on a lack of confidence or acrimony and noted that those circumstances, while possibly a ground for the appointment of a trustee, do not always support that result. "There is no per se rule by which mere conflicts or acrimony between debtor and creditor mandate the appointment of a trustee." *In re Sundale, Ltd.*, 400 B.R. at 909 (quoting *In re Marvel Ent. Grp., Inc.*, 140 F.3d 463, 473 (3d Cir. 1998) (internal quotations and alteration omitted)). And the bankruptcy court in *Eurospark* appointed a trustee based on its finding that the debtor's sole shareholder had a conflict of interest; its decision was bolstered by, but not wholly based upon, the fact that the U.S. Trustee and creditors had lost confidence in the shareholder's ability to fulfill his fiduciary duties. *In re Eurospark Indus.*, 424 B.R. at 630-31. Appellants have cited no authority that a loss of confidence by creditors constitutes "cause" to appoint a trustee as a matter of law. Rather, this determination is made on a case-by-case basis. *See In re Marvel Ent. Grp.*, 140 F.3d at 472-73.

Here, the only evidence offered by Appellants were declarations of the ESOP Participants expressing their opinion that they had lost confidence in Debtors' management and in Mr. Paredes. But, as the

bankruptcy court observed, "feelings and perceptions do not rise to the level of evidence establishing cause for what the [courts have] recognized as an extreme remedy."

Based on the record before us, the bankruptcy court did not err in finding that Appellants did not establish cause for appointment of a trustee or conversion to chapter 7. They did not produce evidence sufficient to support a finding of mismanagement, conflict, or any other ground for relief.

## C. The bankruptcy court did not err in denying the Temporary Allowance Motion.

Appellants moved for an order under Rule 3018(a) to allow temporarily the unsecured claims of ESOP Participants, which were the subject of unresolved objections by the Debtors. That rule provides, in relevant part, "Notwithstanding objection to a claim or interest, the court after notice and hearing may temporarily allow the claim or interest in an amount which the court deems proper for the purpose of accepting or rejecting a plan." Rule 3018(a). The motion stated that the rights of the ESOP Participants and beneficiaries were either equity or unsecured debt, depending on the individual circumstances, but reaching a conclusion on that issue would require an extensive audit of the Debtors' records.

Debtors opposed the motion, pointing out that Appellants' claims were against the ESOP, not the Debtors, and that Mr. Paredes was the proper party to assert claims on behalf of the ESOP Participants in his role

as ESOP Trustee. They also pointed out that the ESOP Document grants the ESOP Trustee the power to vote, in his discretion, any stock held in the ESOP Trust.

The bankruptcy court denied the motion on the ground that Appellants had not established that there were any claims that were capable of being allowed or estimated on a temporary basis.

Appellants argue that the bankruptcy court erred by failing to require evidence regarding whether some or all ESOP Participants were unsecured creditors. They argue that they had claims against the Debtors because the plan called for termination of the ESOP, after which CPESAZ would be obligated to fund their retirement. But they ignore that, to be allowed as claims against the Debtors, any unsecured claims would have had to exist as of the petition date. Although Appellants argue that the bankruptcy court "should have" granted the motion, they have not identified any legal or factual basis for concluding that the court erred in denying it. In any event, as discussed below, we agree with the bankruptcy court that the ESOP Trustee was the proper party to vote on the Plan on behalf of the ESOP Participants.

D.    **The bankruptcy court did not abuse its discretion in confirming Debtors' Plan.**

Appellants contend that the bankruptcy court abused its discretion in several ways when it confirmed the Plan. Specifically, they argue that (1) the bankruptcy court erred in confirming the Plan without requiring a

19

direction pass-through vote by the individual ESOP Participants; (2) the Plan contained impermissible third-party releases; (3) the Plan is tainted by conflict; (4) the Plan discharged the Debtors; and (5) the Plan violated the "best interests test."

### 1. The bankruptcy court did not err in confirming the Plan without requiring a direction pass-through vote.

Appellants argue that confirmation of the plan without a direction pass-through vote violated ERISA, the ESOP Document, and Arizona law. We disagree. Nothing in the statutes or the ESOP Document required such a vote.

ERISA provides that a tax credit employee stock ownership plan qualifies under ERISA

> only if each participant or beneficiary in the plan is entitled to direct the plan as to the manner in which voting rights under securities of the employer which are allocated to the account of such participant or beneficiary are to be exercised with respect to any corporate matter which involves the voting of such shares with respect to the approval or disapproval of any corporate merger or consolidation, recapitalization, reclassification, liquidation, dissolution, sale of substantially all assets of a trade or business, or such similar transaction as the Secretary may prescribe in regulations.

26 U.S.C.A. § 409(e)(3).

The ESOP Document provides in part at Section 8 (entitled "Voting of CPES Stock"):

> Shares of CPES Stock in the Trust shall be voted in the manner determined by the Trustee. With respect to any corporate

matter which involves the voting of such shares at a shareholder meeting and which constitutes a merger, consolidation, recapitalization, reclassification, liquidation, dissolution, sale of substantially all assets of a trade or business or a similar transaction specified in regulations under Section 409(e)(3) of the Code, however, each Participant (or Beneficiary) will be entitled to give confidential instructions as to the voting of shares of CPES Stock then allocated to his Stock Account in accordance with procedures established by the Trustee.

Finally, Arizona law provides:

A. On the terms and conditions and for the consideration determined by the corporation's board of directors, a corporation may sell, lease, exchange or otherwise dispose of all or substantially all of its property, with or without the goodwill, other than in the usual and regular course of business, if the board of directors proposes and its shareholders approve the proposed transaction.

B. For a transaction to be authorized:

1. The board of directors shall recommend the proposed transaction to the shareholders unless the board of directors determines that because of conflict of interest or other special circumstances it should make no recommendation and communicates the basis for its determination to the shareholders with the submission of the proposed transaction.

2. The shareholders entitled to vote shall approve the transaction.

Ariz. Rev. Stat. § 10-1202.

Appellants complain at the outset that the asset sale that occurred early in the case should not have been approved without giving the individual ESOP Participants the opportunity to direct a vote. Based on the

plain language of the relevant statutes and Plan document, they may be correct as to the sale. But Appellants did not move for reconsideration on that ground nor do they assert on appeal that they were denied due process. In any event, the order approving the sale was not appealed and is now final.

Nothing in the quoted statutes or Plan Document requires that the individual participants be allowed to direct a pass-through vote with respect to confirmation of a chapter 11 plan. Mr. Paredes voted on behalf of the ESOP Participants pursuant to his duties as ESOP Trustee. To the extent Appellants object to the fact that Mr. Paredes voted to accept the Plan, they have not explained how this vote violated his fiduciary duties.

### 2. The release, exculpation, and indemnification provisions in the plan do not violate the Bankruptcy Code or ERISA.

Appellants argue that the releases, exculpation, and indemnification provisions of the Plan violate their rights in two ways. First, they argue that nonconsensual third-party releases and exculpations violate § 524. Second, they argue that those provisions violate their rights under ERISA.

Release and exculpation provisions are found at Articles 9.2 and 9.3 of the Plan. Article 1.1 of the Plan defines "Exculpated Party" as "(a) the Debtors; (b) the Patient Care Ombudsman, and (c) with respect to each of the foregoing, such Entity's successors and assigns and current affiliates, subsidiaries, officers, directors, trustees, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants,

representatives, and other Professionals." And Article 1.1 defines "Released Parties" as "(a) the Debtors; (b) Faegre Drinker Biddle & Reath LLP [Debtors' counsel]; and (c) CohnReznick Capital Markets Securities, LLC [Debtors' investment banker]."

Article 9.2 of the Plan provides that Released Parties are released and discharged from any and all claims of the Debtors and the Estates related to Debtors' restructuring efforts, intercompany transactions, the formulation, preparation, dissemination, negotiation, or filing of the plan documents, plan documents, contracts and releases, the chapter 11 cases, the plan, the purchase agreements, consummation and administration of the plan, and the business or contractual arrangements between Debtors and any released party "taking place on or before the Effective Date relating to any of the foregoing." Article 9.2 also states that the releases do not apply to post-effective date obligations of any person or entity under the plan, any cause of action related to an act or omission that constitutes actual fraud, willful misconduct, or gross negligence, or any of the Litigation Claims as defined in the Plan.

Next, Article 9.3 provides:

> Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the Disclosure Statement, the Plan, the Sale Transactions, the Purchase Agreements, or any Plan Document, contract,

23

instrument, release or other agreement or document (including providing any legal opinion requested by any Person or Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Exculpated Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Disclosure Statement or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the distribution of property under the Plan or any other related agreement, except for claims related to any act or omission that is determined in a final order to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Persons and Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties have, and upon closing of the Chapter 11 Cases or the Effective Date shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of, and distribution of, consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

The Ninth Circuit has held that § 524(e) precludes bankruptcy courts from discharging the liabilities of non-debtors. *Resorts Int'l, Inc. v. Lowenschuss (In re Lowenschuss)*, 67 F.3d 1394, 1401 (9th Cir. 1995). That subsection provides in relevant part that "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any

other entity for, such debt." 11 U.S.C. § 524(e). More recently, however, the Ninth Circuit has held that "tailored" exculpation clauses are permissible. *Blixseth v. Credit Suisse*, 961 F.3d 1074, 1082 (9th Cir. 2020). In *Blixseth*, the Ninth Circuit held that a plan provision exculpating a creditor from potential claims against it did not run afoul of § 524(e) because it was narrow in scope and time. 961 F.3d at 1081. Specifically, the provision was limited to releasing the parties for acts or omissions in connection with, relating to, or arising out of the chapter 11 cases or the bankruptcy filing, i.e., acts occurring during the bankruptcy proceedings and not before. *Id.* The provision also applied only to negligence claims; it excluded willful misconduct and gross negligence. *Id.* at 1081-82. And it covered only parties closely involved in drafting the plan. *Id.* at 1082. The court concluded that "§ 524(e) does not bar a narrow exculpation clause of the kind here at issue—that is, one focused on actions of various participants in the Plan approval process and relating only to that process." *Id.*

As can be seen, the release and exculpation provisions in the Plan extend only to the estate's professionals who worked to assist the Debtors in effectuating a plan, and they exclude willful misconduct and gross negligence. They do not include the ESOP Trustee as an exculpated party, and Article 1.1(79) of the Plan (defining "Preserved D&O Claims") preserves claims and causes of action relating to the ESOP. As such, the bankruptcy court did not err in concluding that the release and exculpation

25

provisions fell into the category of tailored, limited exculpation clauses that are not prohibited under the Code or Ninth Circuit case law.

Appellants also contend that the indemnification provision of the Plan violates ERISA. They quote Article 6.3 of the Plan, which provides:

> All indemnification obligations in place as of the Effective Date (whether in the by-laws, certificates of incorporation or formation, limited liability company agreements, other organizational or formation documents, board resolutions, indemnification agreements, employment contracts, or otherwise) for the post-petition directors, officers, trustees, managers, employees, attorneys, accountants, investment bankers, and other professionals of the Debtors, as applicable, shall be assumed and remain in full force and effect after the Effective Date, and shall not be modified, reduced, discharged, impaired, or otherwise affected in any way, and shall survive Unimpaired and unaffected, irrespective of when such obligation arose.

They then point out that the ESOP Trust Agreement contains a provision under which CPES purports to indemnify "each individual Trustee, to the extent permitted by law, against any personal liability or expense resulting from his or her service as Trustee, except for liability or expense incurred by reason of his or her own willful misconduct or gross negligence." Amendment 2015-2 to the CPES ESOP Document purports to indemnify "each member of the [ESOP] Committee (to the extent permitted by law) against any personal liability or expense resulting from his service on the Committee, except such liability or expense as may result from his own willful misconduct."

26

They argue that these provisions, which they assume are incorporated into the Plan by Article 6.3, violate 29 U.S.C. § 1110(a). That statute provides, in relevant part, "any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under this part shall be void as against public policy."

As Appellees point out, 29 U.S.C. § 1110 also contains a provision permitting the purchase of liability insurance for fiduciaries. And Amendment 2015-2 to the ESOP Document provides, "to the extent required under Section 412 of ERISA, CPES shall secure fidelity bonding for the fiduciaries of the Plan." It also provides that CPES may obtain liability insurance for fiduciaries. Such insurance was purchased in connection with the CPES ESOP, which is consistent with ERISA requirements. The bankruptcy court did not err in approving the release, exculpation, and indemnity provisions of the Plan.

### 3. There is no evidence of any conflicts of interest.

Appellants contend that "the plan of liquidation is conflicted" for two reasons. First, they assert that Mr. Paredes has a conflict because he was previously represented by Debtors' counsel, Faegre Drinker Biddle & Reath, LLP ("Faegre Drinker"), and that representation was not disclosed, and because they believe he is acting at the behest of Debtors' management. Second, as explained below, they complain that the Plan

27

provisions create a conflict between the Liquidating Trustee and members of the Trust Oversight Committee ("TOC").

To begin, Appellants assert that Mr. Paredes' appointment as ESOP Trustee was "clouded in controversy." Faegre Drinker did not disclose in its appointment application that it had a prior relationship with Mr. Paredes or that Mr. Paredes had executed a conflict of interest waiver. The ESOP Trust Agreement and the ESOP Trustee's engagement letter permit the ESOP Trustee to resign upon 60 days' written notice to CPES. The ESOP Trustee may resign if given instructions or directions from CPES with which he is unable or unwilling to comply. He may be removed at any time by the board of directors of CPES. Based on these provisions, Appellants characterize Mr. Paredes as an at-will employee of the Debtors who acts at the discretion of Debtors' management. But they cite no evidence in the record to support this assertion.[6]

Appellants next point out that the Plan permits the ESOP Trustee to be a member of the TOC, which oversees the Liquidating Trustee. The TOC

---

[6] Notably, corporate managers are not prohibited from serving as ESOP fiduciaries. *See* 29 U.S.C. § 1108(c)(3) ("Nothing in section 1106 of this title [enumerating prohibited transactions, such as self-dealing] shall be construed to prohibit any fiduciary from serving as a fiduciary in addition to being an officer, employee, agent, or other representative of a party in interest."). *See also Grindstaff v. Green*, 133 F.3d 416, 421-22 (6th Cir. 1998). The *Grindstaff* court explained that ESOPs are exempted from ERISA's strict prohibitions against self-dealing because of the "distinctive dual nature and purpose of ESOPs as both a retirement plan and a means of corporate finance." 133 F.3d at 421 (citation and internal quotations omitted). As such, ESOPs are not intended to guarantee retirement benefits; they place employee retirement assets at much greater risk than does the typical diversified ERISA plan. *Id.*

is comprised of Mr. Paredes, CapGrow Holdings JV Sub IV LLC, Debtors' largest unsecured creditor, and Sentry Insurance, CPES's workers compensation and employer liability insurer.

Under Articles 5.2 and 5.4 of the Plan, the Liquidating Trust is vested with all Causes of Action.[7] The Liquidating Trustee has the authority to enforce those causes of action, and the Liquidating Trust has the sole responsibility and authority to pursue, settle, or abandon all Litigation Claims[8] that are not expressly released or waived under the Plan.[9] Under

---

[7] "Causes of Action" is defined in Article 1.1(13) of the plan as "any and all claims, actions, causes of action, choses in action, suits, debts, damages, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, judgments, remedies, rights of set-off, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims, and crossclaims (including all claims and any avoidance, recovery, subordination, or other actions against Insiders and/or any other Entities under the Bankruptcy Code, including Avoidance Actions) of any of the Debtors, the debtors in possession, and/or the Estates (including those actions set forth in the Plan Supplement), whether known or unknown, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, that are or may be pending on the Effective Date or commenced by the Liquidating Trustee after the Effective Date against any Entity, based in law or equity, including under the Bankruptcy Code, whether direct, indirect, derivative, or otherwise and whether asserted or unasserted as of the date of entry of the Confirmation Order."

[8] "Litigation Claims" are defined in Article 1.1(69) of the plan as "any and all Causes of Action of any Debtor and/or any of the Estates against any Entity, including but not limited to, (a) all claims and Causes of Action related to or arising out of the ESOP that are not Direct ESOP Claims, (b) the Preserved D&O Claims, (c) all claims and Causes of Action arising under Chapter 5 of the Bankruptcy Code (other than Causes of Action that constitute Purchased Assets), and (d) all claims and Causes of Action against insiders of the Debtors."

[9] At oral argument, Appellants' counsel stated that his clients want the ability to assert derivative claims against Debtors. But it is not clear what evidence would support such claims; to the extent Appellants allege they were injured by the process

Paragraph 2.7 of the Liquidating Trust Agreement, the Liquidating Trustee has the authority, with the TOC's consent, to retain professionals to carry out its duties under the agreement. Appellants assert that these circumstances add up to a conflict of interest because the Liquidating Trustee would be discouraged from bringing claims against any member of the TOC.

Additionally, Appellants point out that the Liquidating Trustee could replace the ESOP Trustee, but the ESOP Trustee is a member of the TOC that maintains oversight over the Liquidating Trustee. They also note that the fees for the Liquidating Trustee's services are to be paid from the Liquidating Trust and thus will reduce amounts to be distributed to the ESOP Participants, but they are not subject to court approval. Appellants acknowledge that the Liquidating Trustee is a fiduciary, but they argue that the bankruptcy court should have required him to submit fee applications that could be scrutinized by the ESOP Participants.

These arguments and circumstances do not establish any conflicts of interest. To establish a conflict, it must be shown the party in question has duties to different individuals or entities that have adverse interests. Under ERISA, "[a] fiduciary with respect to a plan shall not . . . in his individual or in any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of

leading up to and including confirmation of the plan, any such injury has yet to be articulated.

the plan or the interests of its participants or beneficiaries." 29 U.S.C. § 1106(b)(2). Appellants point to no evidence of any conflicts of interest among Debtors, their counsel, and the ESOP Trustee. Although Debtors' counsel has represented Mr. Paredes, that representation was limited to Mr. Paredes' professional capacity as a fiduciary for ESOP trusts.[10] Appellants cite no evidence of conduct by the ESOP Trustee that would raise questions about his adherence to his fiduciary obligations.

With respect to the relationship between the Liquidating Trustee and the TOC, the Liquidating Trustee is an independent fiduciary and, under paragraph 2.4 of the Liquidating Trust Agreement, may be removed only upon request of the TOC and approval by the bankruptcy court. Debtors' directors and officers have no say in the Liquidating Trustee's role or continued employment. There is no evidence in the record that the Liquidating Trust has claims against members of the TOC. And the Liquidating Trustee does not control claims against the ESOP Trustee. All claims against the ESOP Trustee are held by the ESOP Trust and governed by ERISA, not the estates or the Liquidating Trust. *See* 29 U.S.C. § 1132(a) (providing civil remedies for breach of fiduciary responsibilities).

---

[10] Appellants moved to disqualify Debtors' counsel. The bankruptcy court recently ruled on that motion. It found that Faegre Drinker's failure to disclose its prior relationship with Mr. Paredes did not amount to a disqualifying conflict, but it was a violation of Rule 2014. Accordingly, the bankruptcy court reduced the requested fees by $120,000 as a sanction. On May 11, 2022, Appellants appealed to this Panel the order denying their disqualification motion and the order approving the reduced fees (BAP No. CC-22-1090).

Appellants also complain that the Plan permitted Debtors and the ESOP Trustee to choose the Liquidating Trustee. While this is true, the appointment of the Liquidating Trustee was subject to bankruptcy court approval. Moreover, Appellants point to no evidence in the record of any impropriety in the selection of the Liquidating Trustee.

In short, Appellants' assertion that conflicts exist is speculative and not based on any evidence in the record.

### 4. The Plan does not discharge Debtors.

Appellants argue that the Plan improperly provides for a discharge of the Debtors. It does not. In fact, Article 9.4 of the Plan provides, "confirmation of this Plan does not operate to discharge the Debtors; provided, however, that upon confirmation of the Plan, the occurrence of the Effective Date, and the distributions provided for under the Plan, the Holders of Claims and Equity Interests may not seek payment or recourse against or otherwise be entitled to any distribution from the Estates or Liquidating Trust except as expressly provided in the Plan." Appellants have not cited any authority suggesting that this provision is impermissible.

### 5. The Plan does not violate the "best interests" test.

Section 1129(a)(7) requires that each holder of an impaired claim or interest must either accept the plan or receive on account of its claim or interest property of a value, as of the effective date of the plan, that is not less than the amount the holder would receive if the debtor were liquidated

32

under chapter 7. Ordinarily, this determination is made using a liquidation analysis showing a comparison of estimates of how much would be available for distribution under the plan versus a chapter 7. As noted, the liquidation analysis attached to the disclosure statement estimated that $8.4 million would be available for distribution to the ESOP Trust after payment of allowed claims, compared to $8 million in a chapter 7 liquidation.

Appellants do not quibble with the liquidation analysis itself, but they contend that the releases and exculpations granted to Debtors' insiders, the ESOP Trustee, TOC members and other fiduciaries and attorneys would not have been granted in a chapter 7 liquidation. Appellants assert, with no citation to evidence in the record or any analysis, that a chapter 7 trustee would have had an opportunity to pursue "these claims" for the benefit of the estate. Appellants do not identify any such claims, nor do they cite any legal authority suggesting that this is a basis for finding that the Plan did not meet the best interests of creditors test. This argument is frivolous.

## CONCLUSION

For all these reasons, the bankruptcy court did not err in denying Appellants' motion to appoint a chapter 11 trustee and the Temporary Allowance Motion. Nor did it abuse its discretion in confirming the Plan. We AFFIRM.